UNITED STATES DISTRICT COURT FOR
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | DUSTIN LANCE, | |
| | Plaintiff, | |
| v. | | Case No.: CIV-17-378-RAW |
| (2) | BOARD OF COUNTY COMMISSIONERS OF PITTSBURG COUNTY, OKLA., | ATTORNEY LIEN CLAIMED JURY TRIAL DEMANDED |
| (3) | CHRIS MORRIS, Sheriff of Pittsburg County, Okla. in his official capacity, | |
| (4) | MIKE SMEAD, in his individual capacity, | |
| (5) | DAKOTA MORGAN, in his individual capacity, | |
| (6) | EDWARD MORGAN, in his individual capacity, | |
| (7) | STEPHEN SPARKS, in his individual capacity, | |
| (8) | MCALESTER REGIONAL HEALTH CENTER AUTHORITY d/b/a McAlester Regional Hospital, and | |
| (9) | GARY R. LEE, M.D., | |
| (10) | JOEL KERNS, former Sheriff of Pittsburg County, in his individual capacity, | |
| (11) | DANIEL HARPER, in his individual capacity | |
| | Defendants. | |

**SECOND AMENDED COMPLAINT**

Plaintiff, Dustin Lance ("Lance"), pursuant to this Court's Order (*See* Doc. No. 48), for his cause of action against the Defendants, alleges and states as follows:

## I.

### INTRODUCTION

This is a legal action arising from indifference and a failure to provide constitutionally adequate medical care in response to an emergent health condition reported to the county Defendants.

This action includes claims for the deprivation of rights secured by the Fourteenth Amendment to the U.S. Constitution, actionable through 42 U.S.C. § 1983, and for deprivations of Art. 2 § 7 of the Oklahoma Constitution, actionable through *Bosh v. Cherokee County Governmental Building Authority, et al.*, 305 P.3d 994 (Okla. 2013) and *GJA v. Okla. Dep't of Human Servs.*, 347 P.3d 310 (Okla. Civ. App. 2015).

The separate claims against Dr. Gary Lee and McAlester Regional Hospital arise the failure to ensure appropriate and timely transfer under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), consistent with 42 U.S.C. § 1395dd.

## II.

### PARTIES, JURISDICTION AND VENUE

1. Lance is a resident of the State of Oklahoma.

2. The Board of County Commissioners for Pittsburg county, Oklahoma ("Board") is the legislative entity with non-delegable statutory responsible for providing a jail facility for Pittsburg County, Oklahoma that is adequate for the safe-keeping of inmates. *See* 57 O.S. § 41. The Board is liable under state law for the actions of county employees under a theory of *respondeat superior* consistent with the common law principles set forth by the Oklahoma Supreme Court in *Baker v. Saint Francis Hosp.*, 2005 OK 36, 126 P.3d 602 (Okla. 2005), made applicable to the Board here pursuant to the Oklahoma Supreme Court decision in *Bosh v. Cherokee County Governmental Building Authority*, 305 P.3d 994 (Okla. 2013).

3. Chris Morris, in his official capacity, ("County") is the current Sherriff of Pittsburg County. County is responsible for official policies, practices, training, and hiring, at the Pittsburg County Jail ("PCJ").

4. Joel Kerns, in his individual capacity ("Kerns"), is the former Sheriff of Pittsburg County, and was the Sheriff during the detention at issue. Kerns was the final policymaker at the PCJ relative to all operational aspects, including policies, procedures, and practices material to the provision of adequate medical care at the PCJ.

5.     Deputies Mike Smead ("Smead"), Dakota Morgan ("D. Morgan"), Edward Morgan, ("E. Morgan"), Stephen Sparks ("Sparks"), and Daniel Harper ("Harper") are or were employees of Pittsburg County, Oklahoma working at the PCJ during times from December 15, 2016 through December 19, 2016, and at all times were acting under color and authority of state law, and within the scope of their employment.

6.     McAlester Regional Health Center Authority d/b/a McAlester Regional Hospital ("MRHC"), is a facility providing medical services in McAlester, Oklahoma. MRHC maintains a hospital emergency department and must adhere to obligations imposed by federal law under EMTALA. Under EMTALA, MRHC has both a duty to provide appropriate medical screening to determine whether an emergent medical condition exists and must either stabilize a patient suffering an emergent medical need or must transfer that patient to another facility capable of addressing the emergent need.

7.     Dr. Gary R. Lee is a physician providing medical services at the MRHC. Dr. Lee, as a physician providing emergent care to patients, is subject to the rules and obligations imposed by federal law under EMTALA. Under EMTALA, Dr. Lee has both a duty to provide appropriate medical screening to determine whether an emergent medical condition exists and must either stabilize a patient suffering an emergent medical need or must

4

transfer that patient to another facility capable of addressing the emergent need.

8. The events complained of herein occurred at the Pittsburg County Jail and MRHC, which are within the territorial jurisdiction of this Court. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction with respect to the federal questions set forth herein pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1395dd. This Court also has supplemental jurisdiction over the state law claims as set forth herein pursuant to 28 U.S.C. § 1367.

## III.

### STATEMENT OF FACTS

9. That on or about December 15, 2016, Lance was booked into the PCJ. Lance entered the PCJ as a pretrial detainee and had not been convicted of any crime at the time of his booking or at any point in time during his four day stay at the PCJ. While a resident in the PCJ, Lance was in the custody and control of Kerns and County, and exposed to Smead, D. Morgan, E. Morgan, Sparks, and Harper. As a result of his incarceration, these Defendants were responsible for the care, safety, well-being, and medical treatment of Lance.

10. On December 15, 2016, Lance took the Trazadone that was given to him by another inmate inside the PCJ. Unbeknownst to Lance, the medication induced a side effect which manifested in a penile erection.

5

11. When his penile erection did not subside or go away, Plaintiff either complained directly to Smead, D. Morgan, E. Morgan, and Sparks, or caused them to know about his emergent medical condition. Despite actual knowledge of Lance's emergent medical condition, and despite subjective knowledge that his condition required emergent care, Lance was not referred to any medical professional and his erection continued. Lance made repeated requests for medical attention to these Defendants, and his condition was obvious to these Defendants who are required by state law to continually monitor the welfare of inmates at least one time per hour.

12. Upon information and belief, based upon the nature of his condition, the numerous and routine welfare checks, and the jokes circulating throughout the facility, Lance contends that Smead, D. Morgan, E. Morgan, Sparks, and Harper knew of his continuing erection from December 15, 2016 until his discharge.

13. Smead, D. Morgan, E. Morgan, and Sparks repeatedly mocked Plaintiff for his condition over the period of days while denying him medical treatment, despite subjective knowledge that such a prolonged erection presented a substantial risk of serious harm.

14. Lance repeatedly requested that Smead, D. Morgan, E. Morgan, Sparks, and Harper provide him urgent medical treatment. Lance alleges these deputies knowingly delayed taking him to a physician or hospital, and refused him any on site medical treatment until December 19, 2016, and, as a

6

result of their actions, Lance suffered a worsening condition, irreparable harm to his penis, and psychological injury.

15.   Lance's erection caused excruciating and unbearable pain, and despite urgent requests for medical attention to Smead, D. Morgan, E. Morgan, and Sparks, Plaintiff did not see the PCJ nurse until four days after he began making repeated requests for medical attention.

16.   After meeting with the nurse, Plaintiff was finally transported to MRHC at around 11:45 a.m. on December 19, 2016. After an initial screening and determination that Lance had a serious medical condition, MRHC and Dr. Lee consulted with Dr. Daniels in Muskogee. Dr. Daniels recommended a series of injections to treat the erection. Unfortunately, the treatment was not successful and it was recommended that Lance be immediately transported to Tulsa, OK for a urology consult.

17.   A nurse at MRHC informed jail staff, including Sparks and Harper, that Lance required immediate transport to St. Francis Hospital in Tulsa, OK, but consistent with PCJ policy and practice, jail staff, including Sparks and Harper, informed the MRHC nurse that they would not be paying for his transport, and that they would transport Plaintiff instead. The MRHC nurse informed jail staff, including Sparks and Harper, that these were physician orders, and that Lance required direct transport. When jail staff, including Sparks and Harper, objected, they were referred to speak directly with Dr. Lee.

18. Despite orders to have Plaintiff immediately transported to St. Francis Hospital in Tulsa, OK, MRHC and Dr. Lee released Plaintiff to the custody of Pittsburg County and its employees, including Sparks and Harper, without securing immediate transport by means that could reasonably address Lance's emergent condition.

19. After leaving MRHC with jail staff, including Sparks and Harper, Lance was informed he was going back to the PCJ so they all could eat. Jail staff, including Sparks and Harper, further informed Lance of their scheme to have him released from the jail on a medical bond consistent with official policy and practices adopted and enforced by Kerns.

20. When Lance arrived at the PCJ, he was eventually provided the opportunity to call family to pick him up once he was released on medical bond. While Lance waited, the transporting officers, including Sparks and Harper, left to eat. Some hours later, either Sparks or Harper returned to the booking area only to be surprised that the medical release bond paperwork, which apparently required judicial approval, was still sitting in the booking area. Frustrated, either Sparks or Harper left with the paperwork and arrived later to release Lance.

21. The medical bond and Lance's release took place approximately six hours later, and he was never provided any transportation to St. Francis for his emergent medical condition by anyone associated with Pittsburg

8

County, which was entirely consistent with official policy and practice adopted and enforced by Kerns.

22. Despite specific orders by the physician regarding the need for immediate transportation to St. Francis based upon Plaintiff's emergent medical condition, Smead, D. Morgan, E. Morgan, Sparks, and Harper did not transport Plaintiff and instead delayed his ability to seek critical medical care. This delay was with actual knowledge of the immediacy and precarious nature of Plaintiff's medical condition. The indifference and cavalier attitude towards Plaintiff's health is only rivaled by ignoring his pleas and repeated requests for medical help over the course of four days.

23. Lance has suffered irreparable and permanent damage to his penis., which has resulted in impaired sexual functioning for which all Defendants are liable.

IV.

STATEMENT OF CLAIMS

COUNT I

<u>INDIFFERENT TRAINING AND SUPERVISION
42 U.S.C. §1983</u>
(DEFENDANTS KERNS AND COUNTY)

24. At all times relevant herein, Defendants Smead, D. Morgan, E. Morgan, Sparks, and Harper were acting under the direction and control, and pursuant to the training, supervision, rules, regulations, policies and procedures of, direction of, acts, and omissions of Kerns and County.

25.    Plaintiff was wrongfully, unlawfully and unnecessarily denied medical care and treatment at the facility operated by Kerns and County as a direct result of the inadequate and indifferent training which trained jailers to disregard emergent medical conditions like the one suffered by Lance, and further trained jailers to disregard directives of physicians who ordered inmates transported for emergent treatment, despite actual knowledge that training jailers to disregard this type of physician order would predictably expose Lance and other inmates to a substantial risk of serious harm. This inadequate training was the moving force behind the conduct of the Defendant jailers in delaying and denying medical treatment for Mr. Lance.

26.    Kerns also managed the PCJ in such a lackadaisical manner that it can fairly be said that he provided no supervision at all. Despite state law placing supervisory responsibility for the PCJ with Kerns, he failed to exercise any meaningful supervision whatsoever, and failed to operate the PCJ with a jail administrator from December 16-19, leaving the PCJ to operate without any direction or guidance, and permitting the state of nature to control. This supervision style provided no supervision in fact, and resulted in a facility where jailers had no direction and no effective chain of command to address or resolve the emergent medical conditions for inmates like Lance, which directly caused a delay in his receipt of medical care which has resulted in permanent injuries. This inadequate supervision was the moving

force behind the conduct of the Defendant jailers in delaying and denying medical treatment for Mr. Lance.

## COUNT II

### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED
### 42 U.S.C. § 1983 & OKLA. CONST. ART. 2, SEC. 7
### (DEFENDANTS SMEAD, D. MORGAN, E. MORGAN, SPARKS, HARPER, AND BOARD)

27. Defendants Smead, D. Morgan, E. Morgan, Sparks, and Harper had an obligation to provide adequate care and treatment to Plaintiff and had actual knowledge that Plaintiff was suffering from an objectively serious medical condition, and despite that knowledge, and with indifference to the consequences, either did nothing to respond to the emergent medical condition confronting them, or their actions were such a departure from what constitutes an adequate response that their conduct exhibited indifference to the circumstances.

28. The failure of Defendants Smead, D. Morgan, E. Morgan, Sparks, and Harper to provide adequate medical care to Plaintiff for four days as he languished in severe pain and the failure to ensure he was properly and timely transported to St. Francis after actual knowledge of his emergent medical condition and need for a consult with an urologist—either prolonged his suffering or caused his condition to worse, for which these Defendants are liable.

29. Board is liable for under the state constitution for the unconstitutional actions of its employees consistent with *Bosh*, *supra*.

## COUNT III

### UNCONSTITUTIONAL POLICES OR PRACTICES TO DENY ADEQUATE MEDICAL CARE
### 42 U.S.C. § 1983
### (DEFENDANTS KERNS AND MORRIS)

30. Defendants Morris and Kerns had a constitutional obligation to provide adequate medical care to pretrial detainees at the PCJ who lack the ability to seek out medical care for themselves.

31. Defendants Morris and Kerns adopted and enforced policies or practices that denied adequate medical care by permitting jail staff to ignore the emergent medical needs of inmates at the facility, and by permitting jail staff to likewise ignore physician orders to provide immediate transport to inmates suffering from emergent and life threatening medical conditions.

32. A constitutional violation is a highly predictable or plainly obvious consequence of these practices, which Morris and Kerns adopted and enforced with indifference to the consequences.

33. The adoption and enforcement of these practices were the moving force behind the injuries and damages suffered by Lance for which Kerns and Morris are liable.

## COUNT IV

### VIOLATION OF THE EMERGENCY MEDICAL TRANSPORTATION AND ACTIVE LABOR ACT PURSUANT TO 42 U.S.C. § 1395DD
### (DEFENDANTS MRHC AND DR. GARY LEE)

34. Under EMTALA, the MRHC has two primary obligations. First, the hospital must conduct an initial medical examination to determine whether the patient is suffering from an emergency medical condition. Plaintiff does not dispute that MRHC conducted an initial medical examination and made a determination that he was suffering from an emergent medical condition.

35. The second obligation requires MRHC, if an emergency medical condition exists, to stabilize the patient before transporting him or her elsewhere. *See Urban v. King,* 43 F.3d 523, 525 (10th Cir.1994). Plaintiff alleges that MRHC failed this second requirement in violation of EMTALA.

36. Despite assuming treatment and custody of the Plaintiff, who relied upon MRHC and its employees to stabilize and transport him consistent with its obligations, MRHC failed to ensure that Plaintiff was transported to St. Francis consistent with its obligations to ensure Plaintiff would have the urology consult desperately needed. Because MRHC failed to ensure that Plaintiff was stabilized and transported to St. Francis Hospital, Plaintiff's health was placed at greater risk and he incurred damage to his physical and mental health.

37. Dr. Gary R. Lee was working at MRHC when Plaintiff presented with an emergent medical condition. Dr. Lee utilized another physician in helping to determine the appropriate care and treatment for Plaintiff's significant injuries. After the initial treatment regimen suggested by Dr. Daniels failed to remedy Plaintiff's critical medical condition, Dr. Lee ordered that Plaintiff would need to be transported to St. Francis so that consult with an urologist could take place.

38. Despite assuming treatment and custody of the Plaintiff, Dr. Lee failed to ensure that Plaintiff was transported to St. Francis, and instead discharged and released Plaintiff to jail staff who, in turn, returned Plaintiff to the PCJ and never transported or planned to transport Plaintiff to St. Francis hospital in Tulsa, OK.

39. Dr. Lee's failure to ensure Plaintiff was stabilized and transported to St. Francis resulted in a significant delay in having his urology consult. Plaintiff's health was placed at greater risk and he incurred damage to his physical and mental health as a result.

**WHEREFORE**, Plaintiff Dustin Lance respectfully requests the Court grant judgment in his favor and award damages in excess of $5,000,000.00.

Respectfully submitted,

BRYAN & TERRILL

s/J. Spencer Bryan
Steven J. Terrill, OBA #20869
J. Spencer Bryan, OBA #19419
BRYAN & TERRILL LAW

9 East 4th Street, Suite 307
Tulsa, OK 74103
Telephone: (918) 935-2777
Facsimile: (918) 935-2778
sjterrill@bryanterrill.com
jsbryan@bryanterrill.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2018, I served the above and foregoing document pursuant to the CM/ECF system on all counsel having entered an appearance.

s/*J. Spencer Bryan*
J. Spencer Bryan