# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUSTIN LANCE,<br><br>    *Plaintiff*,<br><br>v.<br><br>1. BOARD OF COUNTY COMMISSIONERS OF PITTSBURG COUNTY, OKLA.<br>2. CHRIS MORRIS, Sheriff of Pittsburg County, Okla. in his official capacity<br>3. MIKE SMEAD, in his individual capacity,<br>4. DAKOTA MORGAN, in his individual capacity,<br>5. EDWARD MORGAN, in his individual capacity,<br>6. STEPHEN SPARKS, in his individual capacity,<br>7. MCALESTER REGIONAL HEALTH CENTER AUTHORITY, d/b/a McAlester Regional Hosptal,<br>8. GARY R. LEE, M.D.,<br>9. JOEL KERNS, former sheriff of Pittsburg County, in his individual capacity, and<br>10. DANIEL HARPER, in his individual capacity,<br><br>    *Defendants*. | Case No. CIV-17-378-RAW |

## ORDER AND OPINION[1]

This action was originally filed in the District Court of Pittsburg County, Oklahoma. It was removed to this court on October 10, 2017. With leave to amend, Plaintiff filed two amended complaints, on December 8, 2017 and on September 7, 2018. In his Second Amended

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination assigned by CM/ECF.

Complaint, Plaintiff added a claim against McAlester Regional Health Center Authority ("MRHC") and Dr. Lee.[2] Plaintiff brings a claim for violation of the emergency medical transportation and active labor act pursuant to 42 U.S.C. § 1395DD ("EMTALA"). Specifically, Plaintiff alleges that MRHC and Dr. Lee failed to ensure Plaintiff was stabilized and transported to St. Francis. Plaintiff requests judgment in his favor and damages in excess of $5,000,000.00. Now before the court is the motion for summary judgment filed by MRHC [Docket No. 128].[3]

I. **Standard of Review**

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, however, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of the Complaint. *Id.*

---

[2] Plaintiff filed a stipulation of dismissal without prejudice, and Dr. Lee was dismissed from this action in March, 2019. Docket Nos. 86 and 87.

[3] Also at issue are motions for summary judgement filed by former Sheriff Joel Kerns [Docket No. 129], by Edward Morgan [Docket No. 130], by Mike Smead [Docket No. 131], by the Board [Docket No. 135], by Sheriff Chris Morris [Docket No. 136], and by Daniel Harper, Dakota Morgan, and Stephen Sparks [Docket No. 137]. As the issues in these motions are distinct from the issues here, a separate Order will be entered on those simultaneously with this Order.

"Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

While at the summary judgment stage evidence need not be submitted in a form that would be admissible at trial, the substance of the evidence must be admissible. For example, the court disregards "inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form." *Id.* (emphasis in original). "[A]ffidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). Similarly, "[t]estimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004). "To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo*, 452 F.3d at 1199.

## II. Undisputed Material Facts[4]

Plaintiff has alleged an EMTALA claim against MRHC on the basis that MRHC failed to stabilize Plaintiff's emergency medical condition before transferring him and failed to properly transfer him to St. Francis Hospital in Tulsa, Oklahoma. Discovery has concluded, and Plaintiff has not identified an expert to specifically opine on EMTALA, whether MRHC stabilized Plaintiff's emergency medical condition under EMTALA, whether MRHC properly transferred Plaintiff, or whether any alleged EMTALA violations caused or contributed to Plaintiff's injury. MRHC filed its expert report on May 10, 2019, identifying Dr. Barrett Bradt as its expert.

In November 2016, Plaintiff was booked into the Pittsburg County Jail (hereinafter "jail"). On the evening of December 15, 2016, Plaintiff took a trazadone pill from another inmate. He then developed an ischemic priapism, or a prolonged erection, which is a known side-effect of trazadone. Plaintiff was brought to MRHC's emergency department on the morning of December 19, 2016.

Upon arrival at the MRHC emergency department, Plaintiff received a medical screening examination, as well as a full medical examination. As a result of the medical screening examination and the full medical examination, MRHC determined that Plaintiff had an emergency medical condition under EMTALA. MRHC provided medical care and treatment, within the hospital's capacity, to Plaintiff, including (1) consulting with a urologist at another facility, (2) administering Terbutaline injections as outlined by the consulting urologist, and (3) treating Plaintiff's pain associated with his condition.

---

[4] Where statements of material fact are admitted or undisputed, the court includes no citation.

After Plaintiff was stabilized at MRHC, a doctor at St. Francis Hospital in Tulsa, Oklahoma was waiting for Plaintiff. *Docket No. 182-2 at 3*. Dr. Lee testified that as Plaintiff was stabilized, going to St. Francis in police transport or private vehicle was not only acceptable, but possibly more expeditious than going by ambulance. *Id*.

MRHC's expert Dr. Brandt opined that after the treatment at MRHC had been performed, Plaintiff was "properly stabilized and able to be transferred to the outlying facility where additional urological intervention was available." *Docket No. 128-5 at 2*. Dr. Brandt noted that under EMTALA, the term "stabilized" "means that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the patient from a facility" and further opined that Plaintiff's had been stabilized under that definition "because no material deterioration could occur due to the damage from the extended priapism having already occurred." *Id*. Dr. Brandt opined that Plaintiff was an appropriate candidate for transfer under EMTALA. *Id*. As Plaintiff was an inmate, he was released to jailers to be transported to St. Francis Hospital.

## III. Analysis

EMTALA provides in pertinent part:

If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide ***either***—

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition,

    ***or***

(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

5

42 U.S.C. § 1395dd(b)(1) (emphasis added). EMTALA defines the term "to stabilize" as follows: "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility . . . ." 42 U.S.C. § 1395dd(e)(3).

MRHC has presented evidence that it complied with EMTALA and that Plaintiff was stabilized before he was released from MRHC to be transported by the jailers to St. Francis Hospital. Plaintiff has presented no evidence that MRHC failed to comply with EMTALA or that he was not stabilized before he was released from MRHC. As Plaintiff was stabilized, MRHC was not required to transport Plaintiff in accordance with subsection (c). MRHC's motion for summary judgment [Docket No. 128] is hereby GRANTED.

**IT IS SO ORDERED** this 20th day of September, 2019.

_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**